UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


STATE OF LOUISIANA

VERSUS

PFIZER, INC., ET AL.

CIVIL ACTION

NUMBER 15-327-JWD-SCR

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, September 2, 2015.

                                            STEPHEN C. RIEDLINGER
                                      UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA

VERSUS

PFIZER, INC., ET AL.

CIVIL ACTION

NUMBER 15-327-JWD-SCR

**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Motion to Remand By the State of Louisiana filed by plaintiff James D. "Buddy" Caldwell, Attorney General of the State of Louisiana. Record document number 4. Defendants Pfizer, Inc. and Warner-Lambert Company, LLC filed an opposition.[1]

Careful review of the plaintiff's allegations in the Petition, the evidence offered by the defendants, and the applicable law supports the conclusion that the defendants failed to satisfy their burden of establishing federal question jurisdiction. Therefore, the Motion to Remand By the State of Louisiana should be granted.

**Background**

Plaintiff filed this action against defendants Pfizer, Inc. and Warner-Lambert Company, L.L.C. alleging that these two drug manufacturers unlawfully tried to prevent or delay entry into the market of less expensive generic equivalents to their brand name

---

[1] Record document number 7. Plaintiff also filed a reply memorandum. Record document number 10.

pharmaceutical product Neurontin. Neurontin is prescribed as a treatment for epilepsy and for post herpetic neuralgia. The active ingredient in Neurontin is gabapentin. Neurontin's form of gabapentin was covered by two patents (the '175 Patent and the '544 Patent) which expired in 1998 and 2000, respectively.[2] Plaintiff alleged that defendants improperly listed three additional patents (the '476, '479, and '482 Patents) in the Food and Drug Administration ("FDA") publication Approved Drug Products with Therapeutic Equivalents (commonly referred to as the Orange Book), to protect the form of gabapentin marketed as Neurontin from production as generic drug product.[3] Plaintiff alleged that upon expiration of the original patents several generic drug manufacturers filed abbreviated new drug applications ("ANDA") with the FDA seeking approval of generic gabapentin products equivalent to Neurontin. Plaintiff alleged that the defendants responded by filing numerous sham patent infringement cases against the ANDA filers for the purpose of delaying the FDA's final approval of the pending ANDAs.[4] Plaintiff alleged that delaying FDA approval of the generic gabapentin products caused the State of Louisiana to purchase the brand name product at inflated prices instead of

---

[2] Record document number 1-1, Petition, p. 11, ¶¶ 64, 66.

[3] *Id.* at pp. 11-12, ¶¶ 69-83.

[4] *Id.* at p. 13, ¶¶ 87, 88. Subsequent paragraphs allege the details of the patent infringement cases.

spending less for a generic alternative. Plaintiff brought this action seeking restitution, penalties and attorneys fees under provisions of the Louisiana Monopolies Act, LSA-R.S. §§ 51:121, et seq., the Louisiana Unfair Trade Practices Act, LSA-R.S. §§ 51:1401, et seq., and other related state laws.[5]

Defendants removed this case on May 22, 2015 alleging subject matter jurisdiction based on federal question jurisdiction under 28 U.S.C. § 1331 and § 1338. Defendants argued that the plaintiff's claims will require an analysis of the validity and enforceability of the Neurontin patents. Specifically, the defendants asserted that the court will have to determine whether the defendants properly: (1) submitted the Neurontin patents to be listed in the Orange Book, and (2) filed patent infringement claims in federal court against generic competitors. Defendants argued that these claims cannot be resolved without interpreting federal patent laws, including the Hatch-Waxman Act, the Federal Food, Drug, and Cosmetic Act and the accompanying FDA regulations.

Defendants argued that the federal patent issues raised are disputed and necessary to resolved the plaintiff's claims, and that these issues are sufficiently substantial to support exercising federal question jurisdiction. To demonstrate this, the defendants asserted that: (1) the plaintiff's Orange Book listing allegations revolve around a pharmaceutical company's interactions with its

---

[5] Record document number 1-1, Petition, pp. 25-27, ¶¶ 187-210.

regulator when seeking approval of a drug; (2) the federal questions raised by these claims are important because they relate to a key component of a complex federal regulatory scheme; (3) resolution of the plaintiff's Orange Book and "sham" patent litigation allegations are determinative to the outcome; and (4) rulings on the validity and enforceability of the '482 Patent and the propriety of the Orange Book submissions will have an impact on cases which were or could be presented in other jurisdictions.

Defendants also argued that the federal issues in this case can be heard in federal court without upsetting the balance between federal and state courts approved by Congress. Therefore, defendants argued, the plaintiff's claims invoke jurisdiction under § 1331 because they necessarily turn on substantial and disputed claims of federal law.

Plaintiff moved to remand arguing that the defendant cannot establish federal question jurisdiction. Plaintiff argued that federal patent law does not create any cause of action and any references to patent law embedded in the State's Petition are not sufficiently substantial to trigger federal question jurisdiction. Plaintiff argued that its claims target the defendants' actions to block generic competition which violated state laws regarding monopolies and deceptive trade practices. Plaintiff argued that any defense raised by the defendants concerning the validity of their patents is insufficient to confer federal jurisdiction.

4

Plaintiff also noted that its claims do not turn on any pure question of federal law and will involve a highly fact-bound and situation-specific inquiry. Finally, the plaintiff asserted that any disruption of the balance between federal and state responsibilities caused by the removal cannot be justified because it would have no precedential effect on federal patent law.

In their opposition, the defendants argued that their alleged sham patent litigation is a petitioning activity which is protected from state anti-trust laws under the *Noerr-Pennington* doctrine. Defendants argued that the plaintiff must show that the litigation was both objectively baseless and undertaken in subjective bad faith to defeat their immunity. Defendants also maintained their arguments that the plaintiff's claims are wholly based on the interpretation of patent validity and infringement, which necessarily raise substantial federal patent questions.

## Applicable Law

The party invoking removal jurisdiction bears the burden of establishing federal jurisdiction over the state court suit. *Frank v. Bear Stearns & Company,* 128 F.3d 919, 921-22 (5th Cir. 1997). To support removal the defendant must locate the basis of federal jurisdiction in the allegations necessary to support the plaintiff's claims, ignoring the defendant's own pleadings and notice of removal. *Gully v. First National Bank,* 299 U.S. 109, 111, 57 S.Ct. 96, 97 (1936).

Absent jurisdiction under the diversity statute, removal is appropriate only for those claims within the district court's original jurisdiction.  28 U.S.C. § 1441(a).  District courts have been granted original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," and "arising under any Act of Congress relating to patents.  28 U.S.C. §§ 1331 and 1338.  It is well established that the "arising under" language of these Sections has a narrower meaning than the corresponding language in Article III of the Constitution which defines the limits of the judicial power of the United States.  The Supreme Court has interpreted the phrase "arising under" in both sections identically and has applied the precedents for both sections interchangeably. *Gunn v. Minton*, ___ U.S. ___, 133 S.Ct. 1059, 1064 (2013), citing, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

Ordinarily, determining whether a case arises under federal law is governed by the well-pleaded complaint rule - a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint.  Generally, there is no federal jurisdiction if the plaintiff properly pleads only state law causes of action, and the fact that federal law may provide a defense to a state law claim is insufficient to establish federal question jurisdiction.  *Gutierrez*

*v. Flores,* 543 F.3d 248, 251 (5th Cir. 2008); *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188 (5th Cir. 2001).

Federal question jurisdiction is generally invoked by the plaintiff pleading a cause of action created by federal law. Another well-established but less frequently encountered form of federal arising-under jurisdiction, is that in certain cases federal question jurisdiction will lie over state law claims that implicate significant federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng"g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363 (2005). Thus, a federal question exists only in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S.Ct. 2841 (1983); *Singh v. Duane Morris LLP,* 538 F.3d 334, 337-38 (5th Cir. 2008). As the Fifth Circuit observed in *Singh,* however, the Supreme Court in *Grable* warned that *Franchise Tax Board's* "necessary-resolution" language is no automatic test, and should be read as part of a carefully nuanced standard rather than a broad, simplistic rule.

> The fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction: *Franchise Tax Board* ... did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. Likewise, the presence of a disputed federal issue is never necessarily

7

> dispositive. Instead, far from creating some kind of automatic test, *Franchise Tax Board* thus candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction. (internal quotations and citations omitted).

*Singh*, 538 F.3d at 338.

In *Grable* the Supreme Court summed up the standard for determining whether an embedded federal issue in a state law claim raises a substantial question of federal law: "The question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Singh*, 538 F.3d at 338, citing, *Grable*, 545 U.S. at 314, 125 S.Ct. 2363.

The lack of a private cause of action under federal law is relevant to, but not dispositive of, the question of whether the right is substantial enough to satisfy the exercise of federal jurisdiction. The federal issue must be a substantial one that indicates a serious federal interest in claiming the advantages inherent in a federal forum. However, the presence of a disputed federal issue and the importance of a federal forum are never dispositive. The court must always assess whether the exercise of federal jurisdiction would be consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. *Grable*, 545 U.S. at 313, 125 S.Ct. at 2367, 2370.

One year after the *Grable* decision, the Supreme Court again addressed "arising under" jurisdiction in *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 126 S.Ct. 2121 (2006), which involved a health insurer for federal employees. The health insurance carrier sued its former enrollee's estate in federal court under state contract law for reimbursement of the insurance benefits it had paid for the enrollee's medical care. The insurer and the government argued that the complaint raised a federal claim because it sought to vindicate a contractual right contemplated by a federal statute, the Federal Employees Health Benefits Act, and under *Grable* federal law was a necessary element of the insurer's state law claim.

The Court rejected both arguments and found that federal question jurisdiction was lacking, emphasizing that *Grable* exemplifies a "slim category" of cases. In its analysis, the Court made several observations about the circumstances in *Grable* which resulted in finding that the federal issue implicated by the state law claim was sufficient to find jurisdiction based on federal question:

> The dispute there [*Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as substantial, and its resolution was both dispositive of the case and would be controlling in numerous other cases. Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court, and the bottom-line practical issue is the share of that settlement properly payable to Empire.

9

> *Grable* presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax sale cases. In contrast, Empire's reimbursement claim, McVeigh's counsel represented without contradiction, is fact-bound and situation-specific.

*McVeigh*, 547 U.S. at 700-701, 126 S.Ct. at 2137 (internal quotations and citations omitted).

Finally, in *Gunn v. Minton* the Supreme Court reaffirmed the standards and principles in *Grable* that the courts must use to identify the "special and small category" of cases in which arising under jurisdiction lies when a claim has its origins in state rather than federal law. *Gunn*, 133 S.Ct. at 1064-65.

With respect to cases "arising under" federal patent law, the Supreme Court has held that jurisdiction under § 1338 is not necessarily conferred by a well-pleaded claim alleging a single theory which requires the resolution of a patent-law question. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810, 108 S.Ct. 2166 (1988). Claims which can be supported by an alternative theory, not based on patent law, cannot confer jurisdiction under § 1338. *Id.*, citing *Franchise Tax Bd.*, 463 U.S. at 26, & n. 29. Stated another way, if "there are reasons completely unrelated to the provisions and purposes of federal patent law why petitioners may or may not be entitled to the relief they seek under their monopolization claim, ... the claim does not arise under federal patent law." *Christianson,* 486 U.S. at 812, (citations omitted).

**Analysis**

Defendants argued that the *Noerr-Pennington* doctrine supports to federal question jurisdiction. Under *Noerr-Pennington*, the efforts of private individuals to petition the government for anti-competitive action, including filing suit to obtain court action, are exempted from liability under antitrust laws.[6] The doctrine is rooted in the right to petition the government for redress under the First Amendment of the Constitution.[7] However, an exception to this liability may be invoked by showing that the petitioning activity was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."[8]

Defendants argued that the plaintiff must affirmatively show that the Neurontin patent litigation is exempt from the protection afforded under the *Noerr-Pennington* doctrine. Thus, defendants argued, the plaintiff's sham litigation claims establish jurisdiction under § 1331 because they arise under the Constitution.

Defendant's argument is unpersuasive. The Fifth Circuit has affirmed that the *Noerr-Pennington* doctrine is an affirmative

---

[6] *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523 (1961); *Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585 (1965)

[7] *Noerr*, 365 U.S. at 138.

[8] *Noerr*, 365 U.S. at 144.

11

defense.[9] It is well-established that federal question jurisdiction cannot be based on a federal law defense to a state law claim. Consequently, pleading a *Noerr-Pennington* defense cannot support finding federal question jurisdiction in this case.[10]

Defendants have also failed to demonstrate that any embedded patent issues are sufficiently substantial to support federal question jurisdiction.[11] Plaintiff did not challenge any federal procedure or law, nor allege that the FDA or another government agency violated any federal regulations or procedures. Defendants have also not shown that the plaintiff's claims will require an interpretation of complex federal laws that cannot be competently performed by a state court.

Plaintiff's state law anti-trust and unfair trade practices claims are based on the defendants' alleged improper patent submissions in the Orange Book and filing sham lawsuits against potential generic competitors. Defendants argued that these allegations will require an examination of the patents covering Neurontin. However, the plaintiff's claims do not challenge the

---

[9] *Bayou Fleet, Inc. V. Alexander*, 234 F.3d 852 (5th Cir. 2000), citing, *Acoustic Systems, Inc. v. Wenger Corp.*, 207 F.3d 287 (5th Cir. 2000)

[10] *Bernhard v. Whitney Nat.Bank*, 523 F.3d 546, 551 (5th Cir. 2008). Even an inevitable federal defense does not provide a basis for federal question/removal jurisdiction. *Id.*

[11] Because the defendants cannot satisfy the "substantial" requirement under *Grable*, any issues concerning the "necessary" and "disputed" elements do not need to be addressed.

actual validity of the patents but rather contest the reasonableness of the defendants' Orange Book submissions and subsequent lawsuits against allegedly unauthorized manufacturers. The court's analysis will likely focus on the reasons the defendants believed the patents were applicable to Neurontin. Any patent review which may occur as a part of this inquiry is insufficient to satisfy the substantiality requirement of *Grable* and *Gunn*.[12]

Defendants' argument that resolution of the plaintiff's claims would have an effect on outstanding litigation concerning the '482 Patent or conflict with prior federal court findings is unsupported. A state court's assessment of the Neurontin patents under these circumstances will not reverse past holdings or control future decisions on patent validity.

Defendants' reliance on *In re DDAVP Direct Purchaser Antitrust Litigation* is also unpersuasive.[13] While the plaintiff in *DDAVP* asserted similar allegations concerning improper Orange Book listings and sham litigation, the case was decided prior to *Gunn*'s clarification of the substantiality inquiry. The Second Circuit's finding of a substantial question of federal patent law was based on the fact that three of the plaintiff's four theories of recovery

---

[12] *Gunn*, 133 S.Ct. 1059 (plaintiff's legal malpractice claim required a determination of the potential successfulness of the unraised patent argument).

[13] 585 F.3d 677 (2nd Cir. 2009).

would require determining whether the patent was fraudulently procured. The analysis required determining whether there was "(1) a false representation or deliberate omission of a fact material to patentability, (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, (4) but for which misrepresentation or deliberate omission the patent would not have been granted."[14] The *DDAVP* court did not consider whether the decided patent issues would be important to the federal system as a whole. In contrast, the theories for recovery asserted in the present case will not require determining whether a government agency made the correct decision, and thus the outcome lacks a substantive impact on the federal system as a whole.

It is also important recognized that *DDAVP* court was determining whether the Federal Circuit, rather than the Court of Appeals, had jurisdiction over the case under § 1338. The analysis concerning the substantialness of patent law was dicta. The court's decision on jurisdiction was based on a theory of recovery which did not turn on a substantial question of patent law, which precluded Federal Circuit jurisdiction under *Christianson*.[15]

---

[14] 585 F.3d at 685.

[15] 585 F.3d at 685-87.

**Conclusion**

Defendants have the burden of establishing subject matter jurisdiction. Defendants did not cite any controlling precedent which would expand *Grable*'s reach to the circumstances in this case. Thus, the alleged disputed patent issues raised by the defendants are not sufficiently substantial to place the plaintiff's state law claims into the "special and small category" of cases come within *Grable's* "arising under" jurisdiction. Any potential federal issues embedded in the plaintiff's state law claims are not sufficiently substantial to invoke federal question jurisdiction under 28 U.S.C. § 1331 or § 1338.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that Motion to Remand By the State of Louisiana be granted.

Baton Rouge, Louisiana, September 2, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

15